UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KATHERINE ARTEAGA,

    Plaintiff,

v.                                                  Case No:   6:16-cv-2045-Orl-37TBS

STEAK N SHAKE OPERATIONS, INC.,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice and Accompanying Memorandum of Law (Doc 20). Upon due consideration I respectfully recommend that the motion be denied.

### I. Background

Plaintiff Katherine Arteaga alleges that between approximately March 1, 2010 and June 31, 2015, she was employed by Defendant Steak N Shake Operations, Inc. as a server (Doc. 2, ¶ 1). As a server, Plaintiff was a tipped employee (Id., ¶ 2). From approximately June 1, 2015 through June 31, 2016, Defendant employed Plaintiff as a manager (Id., ¶ 1). In her role as a manager, Plaintiff was initially paid $9 per hour, later increased to $11 per hour (Id., ¶ 59).

Plaintiff alleges that while she was working as a server, she spent more than twenty percent of her time on non-server, non-tipped tasks (Id., ¶ 12). Plaintiff complains that when she was not working for tips, Defendant illegally utilized the tip credit of $3.02 and that the tipped minimum wage was $5.03 (Id., ¶ 11). Plaintiff avers that after she became a manager, she "regularly and consistently worked in excess of forty (40) hours

per workweek, often working up to seventy (70) hours per workweek," and that "[t]he General Manager for Defendant instructed Plaintiff to clock in using his number when Plaintiff worked in excess of forty (40) hours per week to avoid payment Plaintiff any overtime pay." (Id., ¶ 60).

Plaintiff brings this action for violation of the Florida Minimum Wage Act, what she terms Dual Occupation, violation of the Florida Constitution, Article X, § 24(c), and violation of the Fair Labor Standards Act ("FLSA") (Doc.. 2). In her answers to the Court's interrogatories, Plaintiff said she is owed $29,401 in unpaid wages, a like amount in liquidated damages, and $7,520.98 in attorney's fees and costs making a total of $66,320.98 (Doc. 10, ¶ 7). Defendant denies liability (Doc. 3).

In March, 2017, Defendant served an offer of judgment in the amount of $2,500, exclusive of attorney's fees and costs on Plaintiff (Doc. 20, ¶ 2). Plaintiff accepted the offer and has already received payment from Defendant (Id., ¶¶ 4-5). The parties separately agreed that Defendant would pay Plaintiff's attorney $5,000 for his fees and costs (Id., ¶ 7). Now, the parties ask the Court to approve their settlement agreement (Id.).

## II. Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees

affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claim is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the FLSA issues. Lynn's Food, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise of issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the parties' settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

III. Discussion

A. Damages

In her answers to the Court's interrogatories, Plaintiff said she is owed $29,401 in unpaid wages. Without any explanation why, Plaintiff has agreed to accept $1,250 in satisfaction of her claim. And, in the settlement agreement, she agrees that this represents "full compensation" to her (Doc. 20-1 at 2). Without a suitable explanation for this disparity, there is no basis upon which the Court can find this compromise to be fair or reasonable.

B. Release of Defendant

In paragraph two of the parties' settlement agreement, Plaintiff agrees that the $2,500 paid to her is "in full and final settlement of any and all Fair Labor Standards Act ("FLSA") **and Florida state law claims, including those under** the Florida Minimum Wage Act, **which were or could have been made by [Plaintiff] against Defendant**." (Id.) (emphasis added). This highlighted language encompasses claims not made by Plaintiff, and which may have nothing to do with her compensation.

Within the body of the release itself, Plaintiff:

> … forever discharges Defendant, Defendant's subsidiaries, business units, affiliates, parent companies, past and present, its predecessors and successors and its respective officers, directors, executives, managers, members, managing members, employees, agents, legal counsel, shareholders, trustees, joint venturers, partners, successors and assigns, past and present from any and all regular and unpaid wage claims, including those under the FLSA, the Florida Minimum Wage Act and Florida state law, demands, acts, actions, occurrences, costs, losses, obligations, proceedings, litigations, demands, liabilities, promises, causes of action, suits for statutory damages, or for injunctive relief, arising out of the Florida state law, the Florida Minimum Wage Act and the FLSA …

(Id., at 3-4). Plaintiff also is releasing Defendant from all matters relating to "the termination of her employment with Defendant." (Id., at 4).

As this Court has observed:

> Additionally, as plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," concessions unrelated to the substance of the FLSA claims have no place in FLSA settlements. See Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010). Indeed, a plaintiff's FLSA claim–which is intended to remedy a defendants' violation of mandatory law–should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (footnote omitted). The exceptionally broad definition of released parties in this settlement agreement is the opposite of narrowly tailored and cannot be approved under even the most lenient of standards.[1] In addition, the agreement includes, more than once, language intended to expand the impact of the agreement beyond the claims actually made in Plaintiff's complaint. For these reasons, I do not find the settlement agreement to be a "fair and reasonable resolution of a bona fide FLSA dispute."

### C. Jurisdiction

In their agreement, the parties agree that "[t]he exclusive jurisdiction and venue for any action between the Parties, whether based on, arising out of or related to this Agreement, the transaction(s) contemplated herein or any other relationship between the Parties, shall lie solely and exclusively in the U.S. Federal Courts in the Middle District of Florida, Orlando." (Doc. 20-1 at 8). "Subject matter jurisdiction is conferred and defined by

---

[1] Reference to "Defendant, its parents, predecessors, successors, subsidiaries, affiliates, and directors, officers, shareholders, members, employees–including, but not limited to, agents, insurers and attorneys" also appears in paragraph 6.g of the settlement agreement.

statute. It cannot be created by the consent of the parties." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000). And, as the Supreme Court has noted, where a court does not expressly retain jurisdiction, "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 382 (1994). In the event of further litigation between the parties, they would at that time, have to demonstrate the basis for the Court's jurisdiction. Certainly it is unlikely that a claim for breach of the settlement agreement would raise a federal question or provide the basis for diversity jurisdiction.

### D. Execution of the Agreement

The signature of the person signing the settlement agreement on behalf of Defendant is not legible and their capacity, i.e., officer, director, or other, is not indicated. Consequently, it is impossible to know whether anyone with the requisite authority to bind Defendant signed the agreement.

### D. Attorney's Fees and Costs

The parties represent that the $5,000 in attorney's fees and costs to be paid to Plaintiff's counsel was negotiated separately from Plaintiff's recovery, and without regard to the amount of the settlement sum (Doc. 34 at 6; Doc. 34-1 at 2-3, 8-9, 14-15, 20-21, 26-27, 32-33, 38-39). This is sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to counsel. See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013). Nonetheless, this is not sufficient to save the agreement, in view of the deficiencies identified above.

## IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the parties' joint motion for approval of their settlement agreement be **DENIED**.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 30, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties