UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KATHERINE ARTEAGA,

    Plaintiff,

v.                                    Case No:   6:16-cv-2045-Orl-37TBS

STEAK N SHAKE OPERATIONS, INC.,

    Defendant.

## REPORT AND RECOMMENDATION

This case comes before the Court on the parties' Second Joint Motion for Approval of Settlement and Dismissal with Prejudice and Accompanying Memorandum of Law (Doc. 26). Upon due consideration, I respectfully recommend that the motion be **denied**.

### I. Background

Plaintiff Katherine Arteaga alleges that between approximately March 1, 2010 and June 31, 2015, she was employed by Defendant Steak N Shake Operations, Inc. as a server (Doc. 2, ¶ 1). As a server, Plaintiff was a tipped employee (Id., ¶ 2). From approximately June 1, 2015 through June 31, 2016, Defendant employed Plaintiff as a manager (Id., ¶ 1). In her role as a manager, Plaintiff was initially paid $9 per hour, later increased to $11 per hour (Id., ¶ 59).

Plaintiff alleges that while she was working as a server, she spent more than twenty percent of her time on non-server, non-tipped tasks (Id., ¶ 12). Plaintiff complains that when she was not working for tips, Defendant illegally utilized the tip credit of $3.02 and that the tipped minimum wage was $5.03 (Id., ¶ 11). Plaintiff avers that after she became a manager, she "regularly and consistently worked in excess of forty (40) hours

per workweek, often working up to seventy (70) hours per workweek," and that "[t]he General Manager for Defendant instructed Plaintiff to clock in using his number when Plaintiff worked in excess of forty (40) hours per week to avoid payment Plaintiff any overtime pay." (Id., ¶ 60).

Plaintiff brings this action for violation of the Florida Minimum Wage Act, what she terms "Dual Occupation," violation of the Florida Constitution, Article X, § 24(c), and violation of the Fair Labor Standards Act ("FLSA") (Doc. 2). In her answers to the Court's interrogatories, Plaintiff said she is owed $29,401 in unpaid wages, a like amount in liquidated damages, and $7,520.98 in attorney's fees and costs making a total of $66,320.98 (Doc. 10, ¶ 7). Defendant denies liability (Doc. 3).

In March, 2017, Defendant served an offer of judgment in the amount of $2,500, exclusive of attorney's fees and costs on Plaintiff (Doc. 20, ¶ 2). Plaintiff accepted the offer and received $2,248.07 which represents the net, after withholding of applicable taxes (Doc. 26, ¶ 6). The parties separately agreed that Defendant would pay Plaintiff's attorney $5,000 for his fees and costs (Id., ¶ 7). On August 29, 2017, the parties filed a joint motion requesting approval of their settlement (Doc. 20). The motion was referred to me, and after review, I recommended that the Court deny it (Doc. 21). The Court did so (Doc. 25) and the parties have submitted a new motion and a revised settlement agreement for the Court's review (Doc. 26). For the reasons explained below, I cannot recommend approval of the parties' revised settlement agreement.

## II. Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"

Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claim is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the

action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the FLSA issues. Lynn's Food, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise of issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the parties' settlement agreement rather than an examination conducted by the Secretary of Labor.

My assessment of fairness is guided by prevailing case law in this Circuit, including Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

### III. Discussion

#### A. Damages

Plaintiff is compromising a claim she valued at $58,802.00 ($29,401 in actual damages plus a like amount in liquidated damages), for $2,500 (Doc. 26-1, ¶ 2). The parties contend that this is reasonable because when Plaintiff answered the Court's interrogatories she estimated that seventy percent of her work time was spent performing untipped "side work." (Doc. 26, ¶ 16). Although this assertion raises questions in my mind, I will, for now, accept it. Plaintiff has agreed to reduce her estimate to "approximately" thirty percent in part due to the inherent uncertainties of litigation (Id., ¶ 21). She also acknowledges that by law, employees can work up to twenty percent of their time per shift performing non-tipped duties without qualifying for the tip credit rate (Id., ¶ 20) (citing Crate v. Q's Rest. Group, LLC, No. 8:13-cv-2549-T-24EAJ, 2014 WL 10556347 (M.D. Fla. May 2, 2014) (Id.). In further explanation of this compromise, Plaintiff admits that she was unsure about whether she had been compensated for her overtime hours, and her claim was not consistent with Defendant's payroll records (Doc. 26, ¶¶ 25-27). Lastly, Plaintiff has "personal expenses that the settlement proceeds would be helpful in paying for." (Id., ¶ 28). If the Court accepts this explanation, then Plaintiff has provided valid reasons for her decision to compromise her claim.

Still, I find the revised settlement agreement objectionable because it is unclear whether Plaintiff has returned the $2,248.07 she was previously paid, or if the parties consider that payment in full of the $2,500 settlement amount. Because $1,250 of the settlement is liquidated damages, it is not appropriate for Defendant to deduct any

withholding from that amount. See Rebeyka v. Wyndham Vacation Ownership, Inc., Case No. 6:14-cv-2073-Orl-37KRS, 2016 WL 7437144, at *2 (M.D. Fla. Jan. 7, 2016) (liquidated damage amount is not subject to deductions or withholdings). The Court cannot tell from this record whether the correct amount of withholding, and no more, is being taken from the payment to Plaintiff. Therefore, I respectfully recommend rejection of the parties' revised settlement agreement.

I have two additional observations (although I am not recommending rejection on these grounds): In the parties' settlement agreement, Plaintiff acknowledges that the $2,500 she is being paid constitutes payment in full, without compromise (Doc. 26-1 at 2). Given the parties' explanation of why Plaintiff agreed to the $2,500, this recital in the agreement cannot be true. Additionally, Plaintiff is being paid by payment card rather than in cash or by check (Id., ¶ 2.a and ¶ 2.b). Payment cards are not without drawbacks, as evidenced by the lawsuits that have been filed in this Court and elsewhere. See Endara v. Automatic Data Processing, Inc., No. 6:16-cv-1032-Orl-40TBS (M.D. Fla. 2016); Silfee v. Automated Data Processing, Inc., No. 3:15-CV-00023, 2016 U.S. Dist. LEXIS 125414 (M.D. Pa. Sept. 15, 2016). Plaintiff should be made aware of the difficulties payment cards may pose to her, so that she can make a knowing and intelligent decision to accept payment cards.

### B. Release of Defendant and Others

In paragraph three of the parties' settlement agreement, Plaintiff is releasing:

> Defendant, and its respective officers, directors, executives, managers, members, managing members, employees, agents, legal counsel, shareholders, trustees, joint venturers and partners (hereinafter referred to collectively as the "Released Parties") from any and all regular and unpaid wage claims, including those under the FLSA, the Florida Minimum Wage Act and Florida state law wage-hour claims, demands,

>> acts, actions, occurrences, costs, losses, obligations, proceedings, litigations, demands, liabilities, promises, causes of action, suits for statutory damages, or for injunctive relief, arising out of Florida state wage-hour laws and regulations, the Florida Minimum Wage Act and the FLSA, whether known or unknown, suspected or unsuspected, that Arteaga may have against the Released Parties arising from, in connection with, or relating to the terms and conditions of her employment and the above styled case. It is expressly intended, understood and agreed that the claims, disputes, and controversies released by Arteaga shall include:
>>
>>> (1).   Fair Labor Standards Act and state and local wage-hour laws and regulations;
>>>
>>> (2).   Claims for disputed wages under the FLSA, Florida Minimum Wage Act, Dual Occupation, and Florida Constitution Unpaid Wages.
>>
>> b. Arteaga agrees and understands that any claims, disputes, and controversies she may have under the FLSA and the Florida Minimum Wage Act, are effectively waived and released by this agreement. This release does not extend to claims which as a matter of law cannot be waived. Arteaga acknowledges and understands that this paragraph is intended to prevent her from making any claim, dispute, and controversy against the released parties regarding any matter or incident relating to or arising from the FLSA or the Florida Minimum Wage Act.
>>
>> c. In exchange for the consideration given, Plaintiff shall submit a stipulation of dismissal with prejudice.

(Doc. 26-1, ¶ 3).

I find the definition of "Released Parties," is too broad. The first question I have is whether Defendant gave Plaintiff a list of the names and addresses of everyone she is releasing before she signed the agreement because without that information, I fail to understand how Plaintiff could make an informed decision to give this release.

Next, as this Court has observed:

> [A]s plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," concessions unrelated to the substance of the FLSA claims have no place in FLSA

> settlements. See Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010). Indeed, a plaintiff's FLSA claim–which is intended to remedy a defendants' violation of mandatory law–should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, 2017 U.S. Dist. LEXIS 26024, at *3 (M.D. Fla. Feb. 24, 2017) (footnote omitted).

In settling this case, Defendant is entitled to finality but not to a gratuitous release of persons and entities who have no liability to Plaintiff. Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207" of the statutes is liable to the aggrieved employee. 29 U.S.C. § 216(b). The FLSA broadly defines the term "employer:"

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a private agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). A release by Plaintiff of only those persons and entities which come within the definition of "employer," in 29 U.S.C. § 216(b), would not be overbroad and would give Defendant the finality it seeks.

In a separate term of the settlement agreement Plaintiff "acknowledges that she is aware that she is giving up all wage related claims that she has or may have against the Released Parties and she hereby waives any and all rights to any further review period." (Doc. 26-1, ¶ 6.g). This language is also overbroad as it does not take into account, the

- 8 -

possibility that Plaintiff worked for one or more of the "Released Parties," at some other time and place than is alleged in this case.

### C. Final Observation

The settlement agreement provides that if Plaintiff "breaches any obligation under this Agreement, any outstanding obligations of Defendant hereunder shall immediately terminate and [Plaintiff] shall return any payments previously received form Defendant pursuant to this Agreement." (Id., ¶ 4). It does not appear to me that Plaintiff has any obligations under the agreement so I fail to understand why this provision was included.

### IV. Recommendation

For these reasons, I do not find the settlement agreement to be a "fair and reasonable resolution of a bona fide FLSA dispute" and I respectfully recommend that the parties' Second Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. 24) be **DENIED**.

### V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on November 3, 2017.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties

## SETTLEMENT AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Plaintiff, _____, and Defendant, _____, intending to be

legally bound, agree as follows:

1. This Settlement Agreement is made and entered into to resolve Plaintiff's claims asserted against Defendant in Case No._____ (the "Claims") currently pending in Case No. _____ in the United States District Court, in and for the Middle District of Florida.

2. None of the payments and other consideration given pursuant to this Settlement Agreement shall be considered an admission of wrongdoing or liability by any party. The parties have entered into this Settlement Agreement for the sole purpose of resolving the Claims, including all related attorney's fee and cost claims, and to avoid the burden, expense, delay and uncertainties of further litigation.

3. Defendant shall pay the total sum of $_____ which is allocated as follows:

(a) To Plaintiff, the sum of $_____, less applicable withholdings and deductions, in full and final settlement of Plaintiff's claims for unpaid wages. Plaintiff shall deliver a fully completed IRS Form W-4 to Defendant and shall receive a fully completed IRS Form W-2 in connection with this payment.

(b) To Plaintiff, the sum of $_____, for liquidated damages. Plaintiff shall deliver a fully completed IRS Form W-9 to Defendant and shall receive a fully completed IRS Form 1099 in connection with this payment.

(c) To Plaintiff's attorney, the sum of $_____, for Plaintiff's attorney's fees and costs. The parties stipulate and agree that this amount was negotiated separately and without regard to the amounts paid to settle Plaintiff's other Claims. Plaintiff's attorney shall deliver a fully completed IRS Form W-9 to Defendant and shall receive a fully completed IRS Form 1099 in connection with this payment.

    Payment shall be made by a single check to a trust account designated by Plaintiffs' attorney, to thereafter be distributed by Plaintiffs' attorney in conformity with this Agreement.

    4. Each party and Plaintiff's counsel shall be responsible for their respective tax obligations in connection with the payments made pursuant to this Settlement Agreement. Defendant makes no representations or warranties concerning the tax requirements, implications or treatment of the payments it makes to Plaintiff and her attorney.

    5. Plaintiff hereby releases and discharges Defendant and any other person or entity that was her "Employer" as that term is defined in 29 U.S.C. § 203(d), during the period alleged in Plaintiff's complaint, of and from any and all liability for the Claims.

    6. The enforceability of this Settlement Agreement is conditioned upon court approval. The parties shall jointly move the court to approve this Settlement Agreement and, upon approval, ask the court to dismiss this case with prejudice. If the court rejects this Settlement Agreement, then it shall be deemed null and void ab initio.

    7. This Settlement Agreement sets forth the complete agreement between the parties and fully supersedes any and all prior agreements or understandings between them pertaining to the subject matter of this Settlement Agreement.

    8. The parties are represented by counsel of their choosing, with whom they have consulted before entering into this Settlement Agreement.

    9. This Settlement Agreement may be signed in counterparts, but shall be interpreted and construed as if signed in one document.

    10. This Settlement Agreement may not be amended or modified except by a written signed by authorized representatives of both parties.

11. This Settlement Agreement shall be interpreted in accordance with the plain meaning of its terms and not for or against any party.

12. In any action to enforce this Settlement Agreement, the prevailing party shall be entitled to recover its taxable costs and reasonable attorney's fees from the other party.

13. Except as provided above, each party is responsible for its own attorney's fees and costs.

Dated to be effective this ___ day of November, 2017.

Plaintiff

_____

_____
Attorney for Plaintiffs
Florida Bar No._____

Defendant _____

By:_____

Its:_____

_____
Attorney for Defendant
Florida Bar No._____